

IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RAUL PONCE JR., | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. § 4:15-CV-782-A |
| | § | |
| CAROLYN COLVIN, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Raul Ponce ("Ponce") filed this action pursuant to Sections 405(g) and 1383(c)

of the United States Code for judicial review of a final decision of the Commissioner of the

Social Security denying his claims for a period of disability and disability insurance benefits

("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social

Security Act ("SSA"). On January 31, 2013, Ponce protectively filed applications for DIB and

SSI, alleging his disability began on August 1, 2005. (Transcript ("Tr.") 8, 157-69.) After his

applications were denied initially and upon reconsideration, Ponce requested a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 8, 97-110.) The ALJ held a hearing on June 4, 2014

and issued an unfavorable decision on July 22, 2014. (Tr. 5-19, 27-50.) On December 16, 2014, the Appeals Council denied Ponce's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-5.) Ponce subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920.

First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.927. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it

2

would not be expected to interfere with the individual's ability to work.   20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).   Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") in the appendix to the regulations.   *Id.* §§ 404.1520(d), 416.920(d).   Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.   *Id.* §§ 404.1520(e), 416.920(e).   And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.   *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled.   *Crowley*, 197 F.3d at 198.   If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.   *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.   *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988).   Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.   *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).   It is more than a mere scintilla, but less than a preponderance.   *Id.*   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings

3

support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III.   ISSUES

In his brief, Ponce presents the following issues:

1.  Whether the ALJ erred in analyzing Ponce's credibility; and

2.  Whether the ALJ erred at Step Four in finding that Ponce could perform his past relevant work because the residual functional capacity assessment ("RFC") contained no limitations for pain and failed to include limitations for some of Ponce's severe impairments and the ALJ improperly relied on the testimony of the vocational expert ("VE").

(Plaintiff's Brief ("Pl.'s Br.") at 3-15.)

### IV.   ALJ DECISION

In his July 22, 2014 decision, the ALJ found that Ponce met the disability insured status requirements of the SSA through December 31, 2009 and that he had not engaged in any substantial gainful activity since August 1, 2005, the alleged onset date of Ponce's disability. (Tr. 10.) The ALJ further found that Ponce suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) degenerative joint disease in the right shoulder; and (3) hypertension. (Tr. 10-12.) Next, the ALJ held that none of Ponce's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 12.)

4

As to Ponce's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), meaning the claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. He retains the ability to stand or walk for up to 6 hours in an 8-hour workday and sit for up to 6 hours in an 8-hour workday. The claimant can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally balance, kneel and stoop, but never crouch or crawl. He can frequently, but not constantly, handle, reach, finger, and feel bilaterally. He cannot engage in overhead work. Finally, the claimant cannot work around hazardous moving machinery, excessive vibration, or at unprotected heights.

(Tr. 12-13 (emphasis omitted).)   The ALJ found, based on his RFC assessment and the testimony of the VE, that Ponce was able to perform his past relevant work as a car salesperson. Alternatively, the ALJ found at Step Five that Ponce was able to perform other jobs that existed in significant numbers in the national economy. Consequently, the ALJ found that Ponce was not disabled. (Tr. 18.)

## III.   DISCUSSION

### A.  Credibility Determination

In his brief, Ponce claims that the ALJ erred in his credibility determination as the ALJ did not properly consider the required factors set forth in Social Security Ruling ("SSR") 96-7p and 20 C.F.R. § 404.1529(c)(3). *See also* 20 C.F.R. § 416.929(c)(3). (Pl. Br. at 3.) Ponce argues that the "ALJ's RFC determination is based in large part on his unsupported conclusion that Mr. Ponce exaggerated his subjective complaints." (Pl.'s Br. at 3.) Ponce claims that the ALJ's alleged reasons for not finding him credible were not, in essence, supported by substantial evidence. (Pl.'s Br. at 4-9.) According to Ponce, the ALJ found him not credible because of the following three reasons: (1) Ponce was able to prepare his own meals, clean his home, do

laundry, drive, go shopping, count change, handle a savings account, and use a checkbook; (2) Ponce lifted a refrigerator after the alleged onset date; and (3) Ponce stopped attending physical therapy and was discharged for failure to attend. (Pl.'s Br. at 4.)  As to the first reason, Ponce argues that the "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." (Pl.'s Br. at 5.)  As to the second reason, Ponce claims that this allegation may or may not be true as the evidence cited by the ALJ does not prove that Ponce lifted a refrigerator after his alleged onset date. (Pl.'s Br. at 5.)  As to the third reason, Ponce admits that he stopped going to physical therapy but argues there may have been a justifiable reason such as a transportation or financial issue and that he attended all but his last two sessions. (Pl.'s Br. at 6.)  Ponce argues that "in finding Mr. Ponce not credible, the ALJ applied incorrect legal standards and failed to articulate his reasoning with sufficient specificity." (Pl.'s Br. at 7.)

In evaluating a claimant's subjective complaints of pain or other symptom, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce such pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. March 16, 2016).  Once the impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 WL 1119029, at *2. A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A

6

claimant's testimony must be consistent with this objective medical evidence.   20 C.F.R. §§ 404.1529(a), 416.929(a).

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 16-3P, 2016 WL 1119029, at *2-4.  Credibility determinations by an ALJ are entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  The ALJ is in the best position to assess a claimant's credibility since the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir.1994). Nevertheless, the ALJ's "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2016 WL 1119029, at *9.  In addition to the objective medical evidence, the ALJ also assesses the credibility of an individual's statements on the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional capacity, limitations and

restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p,

2016 WL 1119029, at *7.

In this case, after setting forth the standards for evaluating a claimant's credibility, the

ALJ stated:

> The claimant alleges disability due primarily to pain symptoms.  He states that he cannot be sitting or standing for more than 30 minutes at a time or else his legs get numb.  He also alleges pain in his shoulders.  Functionally, the claimant alleges difficulty walking, sitting, standing, lifting, squatting, bending, reaching, kneeling, climbing stairs, completing tasks, and using his hands.  Due to medications, the claimant alleges he experiences dizziness.  Further, he has problems sleeping due to pain.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

> The undersigned notes that there are some inconsistencies in the record undermining the claimant's credibility.  Despite alleging disabling symptoms, the claimant is able to prepare his own meals, clean his home, do laundry, drive, go shopping, count change, handle a savings account, and use a checkbook.  He also engaged in activities including lifting a refrigerator after the alleged onset date.  These activities of daily living are inconsistent with allegations of disability.  Additionally, the claimant stopped attending physical therapy and was discharged because of failure to attend.  This behavior detracts from the credibility of the claimant's allegations.  This is especially true, where, as here, the exercises had provided some relief from his pain symptoms.  Taken together, these facts indicate that the claimant's allegations regarding the disabling effects of his impairments are not entirely credible.

> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations resulting from his severe impairments. . . .

(Tr. 13-14 (internal citations omitted).)

Contrary to Ponce's argument, the ALJ did not reject Ponce's assertions of pain. Instead, the ALJ found that Ponce's impairments "could reasonably be expected to cause the alleged symptoms" but found, based on inconsistencies in the record, that the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 13.) While, as noted by Ponce, the ALJ discounted Ponce's credibility based on his ability to do his activities of daily living (including allegedly lifting a refrigerator after Ponce's disability onset date) as well his failure to complete his physical therapy, the ALJ also discounted Ponce's credibility based on the medical evidence. (Tr. 13-14.)

Within the context of discussing Ponce's medical history, the ALJ described various findings by several physicians. Specifically, the ALJ noted, *intra alia*, the following:

> In October 2011, the claimant underwent a physical examination by C.G. Mudaliar, M.D. . . . There, he complained primarily of back pain radiating to the legs. On physical examination, the claimant displayed no sensory deficits. He exhibited tenderness to palpation in the lumbar spine. Although he was able to touch his feet while bending forward, he was positive for straight leg raises. He was also able to squat, heel walk, and toe walk. He displayed a slight tremor in his hands when his arms were held out. X-rays showed degenerative spondylosis, most pronounced at L5-S1.

> . . . .

> In April 2013, the claimant underwent an internal medicine examination by Stella Nwankwo, M.D., an impartial consultative examiner. There, he alleged disability due to his back condition. During the examination, the claimant was able to sit and stand from sitting. He was also able to pick up a pen and sign his name, although with a shaky signature. His gait was normal without the use of an assistive device. In tandem walk, he exhibited a mild loss of balance. Examination of the spine showed tenderness to palpation of the lumbar spine. He did not allow adequate straight leg raises before complaints of pain on the left side. His range of motion was also reduced. Further, he showed mildly reduced overhead reaching, and he could not complete Phalen's test secondary to pain. The claimant's deep tendon reflexes were absent in the left knee, but sensation

9

was intact. X-rays of the lumbar spine showed narrowing of the L5-S1 disc space with marginal spurring, as well as minimal retrolisthesis at L4-L5.

The claimant began care with a new general practitioner physician in April 2014. There, he reported a history of hypertension, back pain, and shoulder pain. Physical examination showed elevated blood pressure. Further, he exhibited tenderness to palpation in the lumbar paraspinal musculature. The spinal lordosis was well-preserved, but he was positive for straight leg raises. Although his reflexes were diminished, he exhibited full grip strength. The clinical findings remain consistent with a limited degree of physical deficits.

As for the opinion evidence, some weight is given to the opinion of [State Agency Medical Consultant ("SAMC") Michal Douglas, M.D. ("SAMC Douglas")], who stated the claimant can perform light work with some postural limitations. This opinion was affirmed by [SAMC Kim Rowlands, M.D. ("SAMC Rowlands"),] on reconsideration. It is given weight to the extent that it is consistent with the residual functional capacity determination above. It is given weight because the doctor is familiar with the Social Security Administration disability determination program. Further, it is consistent with x-rays showing relatively mild changes in the lumbar spine. However, great weight cannot be given to this opinion, as it does not account for the claimant's upper extremity limitations. These limitations are justified by imaging of the claimant's shoulder showing a tendon tear.

Some weight is also given to [SAMC Spoor's opinion] from the prior determination, who stated the claimant can perform light work with some postural and manipulative limitations. This opinion is given weight to the extent that it is consistent with the residual functional capacity determination above. It is given weight because the doctor is familiar with the Social Security Administration disability determination program. Further, it is consistent with imaging of the claimant's shoulder showing a tendon tear.

Some weight is given to Dr. Mudaliar, the consultative examiner. The doctor stated the claimant has no significant difficulties. This opinion is given weight to the extent that it is consistent with the residual functional capacity determination above. It is given weight because it is consistent with the results of the physical examination, such as a normal gait and the ability to touch his toes. However, great weight cannot be given to the opinion, as some limitations are warranted by imaging showing the presence of degenerative disc disease.

. . . .

10

In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. The credibility of the claimant's allegations is weakened by inconsistencies between his allegations, his statements regarding daily activities, and the medical evidence. The inconsistent information provided by the claimant suggests that his subjective complaints may not be entirely reliable. The claimant does experience some limitations as a result of his severe impairments, but only to the extent described in the residual functional capacity above.

(Tr. 14-15 (internal citations omitted).) These medical opinions, in addition to the ALJ's analysis of such opinions and the other evidence in the record, when considered in contrast with Ponce's own testimony about his pain and disabilities, support the ALJ's credibility findings. Thus, the Court finds that the ALJ properly cited evidence in support of his credibility finding and such evidence constitutes substantial evidence in support of the ALJ's credibility finding. Even assuming the ALJ erred in making some incorrect statements regarding the refrigerator or Ponce's physical therapy, any error is harmless as substantial evidence supports the ALJ's credibility determination. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error); *See, e.g., Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (ALJ's consideration of subjective testimony "satisfied his obligation" to make specific credibility findings); *Salgado v. Astrue*, 271 F. App'x 456, 462–63 (5th Cir. 2008) (ALJ's previous discussion of claimant's allegations provided sufficient reasons for otherwise conclusory credibility finding); *Haywood v. Sullivan*, 888 F.2d 1463, 1469–70 (5th Cir.1989) (failure to explain credibility findings was harmless error where decision summarized claimant's

11

testimony and objective medical evidence and substantial evidence supported finding); *Scott v. Comm'r of Soc. Sec. Admin.*, No. 12-00736-BAJ, 2014 WL 1239307, at *6 (M.D. La. Mar. 25, 2014).

Additionally, again contrary to Ponce's arguments, the ALJ did properly review the required factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) in making his credibility determination. As to factor one, which requires an assessment of Ponce's daily activities, the ALJ noted that Ponce was able to prepare his own meals, clean his home, do laundry, drive, go shopping, count change, handle a savings account, and use a checkbook. (Tr. 13.) As to factor two, which considers the location, duration, frequency, and intensity of the claimant's pain or other symptoms, the ALJ acknowledged that Ponce alleged he was disabled due to pain and noted the following: (1) Ponce claimed he could not sit or stand for more than thirty minutes at a time or his legs went numb; (2) Ponce alleged pain in his shoulders and had difficulty walking, sitting, standing, lifting, squatting, bending, reaching, kneeling, climbing stairs, completing tasks and using his hands. (Tr. 13.) In addition, the ALJ noted in his evaluation of the medical records Ponce's continued complaints of pain in his back, right shoulder and complaints of numbness and tingling in his legs and knees (Tr. 14-15.)

As to factor three, which considers any precipitating or aggravating factors, the ALJ noted that Ponce had a history of a back injury and that Ponce had visited the emergency room for an acute injury of his left foot. (Tr. 14.) Additionally, the ALJ noted that Ponce had problems sleeping due to back pain, could not perform overhead activities due to shoulder pain, and had difficulty walking, sitting, standing, lifting, squatting, bending, reaching, kneeling, climbing stairs, completing tasks, and using his hands. (Tr. 13-14.)

12

As to factor four, which evaluates the type, dosage, effectiveness, and side effects of any medication Ponce takes or has taken to alleviate pain or other symptoms, the ALJ acknowledged that Ponce was taking medications and experienced dizziness due to medications. (Tr. 13-14.) As to factor five, which addresses any treatment, other than medication, which Ponce receives or has received for relief of pain or other symptoms, the ALJ noted that Ponce had attended physical therapy, which did appear to lessen his reported pain overall. (Tr. 14.)

As to factor six, which addresses any measures other than treatment the claimant uses or has used to relieve pain or other symptoms, the ALJ noted, as mentioned above, that Ponce claimed he could not sit or stand for more than thirty minutes at a time and also that he did not use an assistive device. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *3. Finally, the ALJ considered factor seven, which reviews any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c). In his opinion, the ALJ noted that Ponce had been diagnosed with hepatomegaly and mental impairments of alcohol abuse and anxiety but that the evidence did not indicate that these were severe impairments. (Tr. 11.)

Based on the foregoing, it is clear in this case that the ALJ properly applied the factors when assessing Ponce's credibility and, contrary to Ponce's claims, sufficient evidence in the record supports the ALJ's credibility determination. Thus, the Court finds that the ALJ's decision contains an adequate discussion and analysis of the objective medical and other evidence, including Ponce's complaints of pain or other symptoms and the ALJ's own observations. As a result, the Court concludes that the ALJ did not err in his credibility determination and remand is not required.

## B. RFC Determination and Step Four

Ponce also argues generally that the ALJ erred in making his RFC assessment because he failed to properly consider his pain symptoms and "gave their cumulative effect on his body short shrift because [the] RFC contains no limitations for pain." (Pl. Br. 9.) Ponce also claims that the ALJ erred by finding at Step Two that he had the severe impairments of degenerative disc disease of the lumbar spine and degenerative joint disease in the right shoulder but then failing to include proper limitations related to either condition in the RFC determination. (Pl.'s Br. at 11-12.) Furthermore, Ponce argues that the ALJ erred in relying on vocational expert testimony in response to a hypothetical question at Step Four that was not supported by substantial evidence. (P.'s Br. at 10.) Ponce claims that the ALJ failed to develop the record with factual information regarding the actual work demands of Ponce's past relevant work and "erred in delegating his fact-finding responsibilities to the VE, which has been expressly discouraged." (Pl.'s Br. at 12-15.) Ponce claims that while an "ALJ may rely on information supplied by the VE at step four, . . . the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work."

An RFC is what an individual can still do despite his limitations. SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do, but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and is based upon

14

all of the relevant evidence in the case record. *Id.* at *3-5. The responsibility for determining a

claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and

continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184,

at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and

the extent to which these symptoms can be reasonably accepted as consistent with objective

medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016

WL 1119029, at *2; SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider

limitations and restrictions imposed by all of an individual's impairments, even impairments that

are not severe. *See* 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable

inferences from the evidence in making his decision, but the social security ruling also cautions

that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8,

1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A.

Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to

determine disability in children). The ALJ is not required to incorporate limitations in the RFC

that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th

Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may

choose whichever physician's diagnosis is most supported by the record.") In reviewing the

ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary

choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir.

2001).

In this case, the ALJ, as set forth above, found that Ponce had the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease in the right shoulder, and hypertension.   The ALJ then found Ponce had the RFC to perform light work[1] with the following additional limitations: (1) frequently climb ramps and stairs but never ladders, ropes, or scaffolds; (2) occasionally balance, kneel, and stoop but never crouch or crawl; (3) can frequently, but not constantly, handle, reach, finger, and feel bilaterally; (4) cannot engage in overhead work; and (5) cannot work around hazardous moving machinery, excessive vibration, or at unprotected heights.   (Tr. 12-13.)   In making such a RFC determination, the ALJ considered, *inter alia*, the medical evidence in the record. (Tr. 13-16.)

To begin with, the ALJ noted, *inter alia*, that a physical examination dated January 2009 showed Ponce, while experiencing pain in his back and right shoulder, had full strength in the extremities.   (Tr. 14; *see* Tr. 267-68.)   Thereafter, in May 2010 an x-ray of the lumbar spine showed "'mild' degenerative spurring and narrowing of the lumbosacral interspace" and an x-ray of the shoulders showed "no bony abnormality." (Tr. 14, *see* 272.)   In July 2010, Ponce reported

---

[1] Light work is defined as follows:

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).  The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id. at* *6.  "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.*

to his general practitioner that he continued to feel pain in his right shoulder and back with some numbness into his thighs. (Tr. 14; *see* Tr. 261-262.)  In September of 2010, an MRI of Ponce's right shoulder revealed "a full thickness tear of the supraspinatus tendon," and some "mild-to-moderate degenerative changes of the AC joint." (Tr. 14, *see* 273.)  In addition, x-rays of the lumbar spine showed "mild central canal stenosis at L4-L5 and L5-S1 with more than 50% loss of disc height at L5-S1" and evidence of retrolisthesis of L5 on S1. (Tr. 14; *see* Tr. 274.)

The ALJ further noted that in October 2011, Ponce, complaining of back pain radiating to his legs, was examined by C.G. Mudaliar, M.D. ("Dr. Mudaliar"), a consultative examiner. (Tr. 14; *see* Tr. 281-82.)  Dr. Mudaliar noted that Ponce displaced no sensory deficits, exhibited tenderness to palpation in the lumbar spine, was positive for straight leg raises although he was able to touch his feet while bending forward, squat, heel walk, and toe walk, and displayed a slight tremor in his hands when his arms were held out. (Tr. 14; *see* Tr. 281-82.)  Dr. Mudaliar also stated that x-rays showed degenerative spondylosis, most pronounced at L5-S1. (Tr. 14; *see* Tr. 282-83.)

Additionally, the ALJ took into account Ponce's visit to the hospital in December 2011, where Ponce complained of back pain. (Tr. 14.)  An examination revealed painful range of motion in his right shoulder and cervical and lumbar spine. (Tr. 14; *see* Tr. 414-16.)  X-rays showed "minimal spurring and rightward curvature of the thoracic vertebrae." (Tr. 14; *see* Tr. 416.)  In January 2012, Ponce saw his general practitioner, complaining of worsening back pain and numbness and tingling in his legs and knees, but he was negative for straight leg raises. (Tr. 14, *see* Tr. 391-92.)  Also, in January 2012, Ponce was evaluated for physical therapy services, which he engaged in through most of February. (Tr. 14; *see* Tr. 370-85.)  For the most part,

17

Ponce reported less pain overall after engaging in physical therapy exercises. (Tr. 14; *see* Tr. 361, 366, 381.)

The ALJ also indicated that, in March 2013, Ponce underwent an internal medicine examination with Stella Nwankwo, M.D. ("Dr. Nwankwo"). (Tr. 15, *see* Tr. 408-13.) During the examination, Dr. Nwankwo noted that Ponce: (1) was able to sit and stand from sitting; (2) was able to pick up a pen and sign his name, although with a shaky signature; (3) had a normal gait without the use of an assistive device; (4) exhibited mild loss of balance in tandem walk; (5) showed tenderness to palpation of the lumbar spine; (6) did not allow adequate straight leg raises due to complaints of pain on the left side; (7) had reduced range of motion; (8) showed mildly reduced overhead reaching; (9) could not complete Phalen's test secondary to pain; and (10) had absent deep tendon reflexes in the left knee but sensation as intact. (Tr. 15; *see* Tr. 408-13.) An x-ray from this visit revealed narrowing of the l5-S1 disc space with marginal spurring, as well as minimal retrolisthesis at L4-L5. (Tr. 15; *see* Tr. 412.)

The AJL further noted that, in April 2014, Ponce went to see a new general practitioner and reported a history of hypertension, back pain, and shoulder pain. (Tr. 15; *see* Tr. 449-50.) Farhana Amir, M.D. found that Ponce's reflexes were decreased, but he showed full grip strength. (Tr. 15, *see* Tr. 450.) The physician noted the following during the examination: (1) elevated blood pressure; (2) tenderness to palpation in the lumbar paraspinal musculature; (3) well-preserved spinal lordosis but positive for straight leg raises; (4) full grip strength even though reflexes were diminished. (Tr. 15; *see* Tr. 449-50.)

In addition, the ALJ also considered a Physical Residual Functional Capacity Assessment ("PRFCA") dated November 2011 in which SAMC Spoor opined that Ponce could, in essence,

18

perform the full range of light work except that he could only occasionally stoop and crouch and never climb ladders, ropes, or scaffolds. (Tr. 15; *see* Tr. 301-08). The ALJ also evaluated a PRFCA dated April 2013 in which SAMC Douglas opined that Ponce had the RFC to perform, in essence, the full range of light work except that he could frequently climb ramps and stairs and stoop, and crouch and never climb ladders, ropes, or scaffolds, or crawl. (Tr. 15; *see* Tr. 65-67.) The ALJ also considered a PRFCA dated June 2013 in which SAMC Rowlands opined that Ponce: (1) could lift twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of two hours and sit for a totally of about six hours in an eight-hour day but standing and walking was limited to two hours combined; and (3) could never climb ramps, stairs, ladders, ropes, or scaffolds, occasionally stoop, crouch or crawl, and frequently kneel. (Tr. 15; *see* Tr. 84-86.)

Based on the evidence set forth above as well as other evidence in the record, the ALJ's RFC determination finding that Ponce is capable of light work with some limitations is supported by substantial evidence. There is clearly medical evidence in the record where doctors opined that Ponce was capable of light work. The ALJ took those opinions into account but added additional limitations based on other evidence in the record. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). The ALJ properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination,

19

and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *See, e.g., Muse*, 925 F.2d at 790. Consequently, the ALJ did not err in his RFC determination and remand is not required.

As to Ponce's argument that it was inconsistent for the ALJ to find at Step Two that Ponce had the severe impairments of degenerative disk disease and joint disease of the right shoulder but then fail to include "proper limitations related to either of the conditions" in the RFC determination, the Court notes that, in general, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry than an ALJ's assessment of the claimant's RFC. Under certain circumstances, the ALJ could find that an impairment is severe at Step Two and then not include any limitations in the RFC determination regarding such impairment because the evidence does not support such limitations. *See, e.g., Kozlowski v. Colvin*, No. 4:13-CV-020-A, 2014 WL 948653, at *5-6 (N.D. Tex. Mar. 11, 2014) (finding that the ALJ did not err in finding that the claimant's carpal tunnel syndrome was severe at Step Two but not including any specific limitations regarding such impairment in the RFC determination). Moreover, in this case, it is clear that the ALJ took Ponce's degenerative disk disease and joint disease of the right shoulder into account in limiting Ponce to light work (which places limitations on the amount of weight a claimant can carry). In addition, the ALJ specifically included additional postural and manipulative limitations in the RFC determination to account for these severe impairments. (Tr. 12-13.)

As to Ponce's claims that the ALJ erred in finding at Step Four that Ponce could perform his past relevant work ("PRW") as a car salesperson based on the testimony of the VE, the Court

20

notes that the ALJ is permitted to consult and utilize a VE at Step Four of the assessment when determining whether the claimant could perform his PRW.[2] *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a [VE] to find that [the claimant] was able to return to her past relevant work . . . ."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.").

"The value of a vocational expert is that [she] is familiar with the specific requirements of a particular occupation, including working conditions and the specific skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). "[T]he hypothetical question posed to the vocational expert by the ALJ must 'incorporate reasonably all disabilities of the claimant recognized by the ALJ.'" *Jones v. Astrue*, 228 F. App'x 403, 408 (5th Cir. 2007). Therefore, the ALJ is not required to incorporate limitations into hypothetical questions presented to the VE that he did not find to be supported in the record or by the RFC. *See, e.g., Morris*, 864 F.2d at 336.

In addition, SSR 82-62 requires that when the ALJ has determined that a claimant retains the RFC to perform a past relevant job, the decision must contain the following specific findings: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 WL 31386, at *4 (S.S.A.

---

[2] It is important to keep in mind that at Step Four, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1386.

1982).  When determining whether a claimant retains the RFC to perform her past relevant work, the ALJ can look, as relevant here, to either (1) the job duties peculiar to an individual job as the claimant actually performed it or (2) the functional demands and job duties of the occupation as generally required by employees throughout the national economy.  SSR 82-61, 1982 WL 31387, at *1-2 (S.S.A. 1982).

In this case, the ALJ found at Step Four, after setting forth the RFC determination, that Ponce was not disabled because he was, *inter alia*, capable of performing his past relevant work as a car salesperson.  (Tr. 16.)  In making this determination, the ALJ first set out the relevant regulations and rules regarding PRW and analyzed why Ponce's PRW as a car salesperson satisfied the recency, duration, and substantial gainful activity requirements to be considered PRW.  (Tr. 16-17.)  The ALJ then stated:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.  The vocational expert testified as to various exertional levels and skill levels, both as they relate to the jobs as they are performed per the DOT and as the claimant performed them.  The vocational expert was presented with a hypothetical individual with residual functional capacity identical to the residual functional capacity found for the claimant, with similar age, education and work experience.  The vocational expert found the hypothetical individual could return to work as a car sales person based on either description.

(Tr. 17.)

Based on the foregoing, the Court finds that the ALJ did not err in relying on the VE's testimony at Step Four to determine that Ponce could perform his PRW as a car salesperson.  Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE in turn mirrored the RFC assessment (Tr. 45-46), the ALJ

did not commit error by relying on the VE's testimony. *See Berry v. Astrue*, No 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), adopted in 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue*, No 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments). Moreover, even assuming that the ALJ erred in relying on the VE's testimony at Step Four, any error was harmless as the ALJ also alternatively found at Step Five that Ponce was able to perform other jobs that existed in significant numbers in the national economy. (Tr. 17-18.) Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal

conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 20, 2016** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED September 6, 2016.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

24